# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DEANDRE' JOHNSON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:18-00015-CV-RK |
| CITY OF KANSAS CITY, MISSOURI, | ) |
| Defendant. | ) |

## ORDER GRANTING IN PART AND DENYING IN PART
## THE CITY'S MOTION TO DISMISS

Before the Court is Defendant the City of Kansas City, Missouri's ("City's") Motion to Dismiss Plaintiff's Amended Complaint ("Motion to Dismiss"), which has been fully briefed and is ready for decision. (Doc. 18; Doc. 19; Doc. 26; Doc. 27.) After careful consideration, and for the reasons below, the Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Specifically, Plaintiff has stated a claim under the Americans with Disabilities Act ("ADA") and the Missouri Human Rights Act ("MHRA") (Counts I and III). However, part of his retaliation claim is not exhausted (Count II), and he has not sufficiently stated a claim for breach of contract or infliction of emotional distress (Counts IV and V).

## Background

The Court assumes the following allegations from the Amended Complaint are true for the purpose of ruling on the Motion to Dismiss. (Doc. 17.) Plaintiff DeAndre' Johnson worked as a code enforcement officer for the City for approximately nine years and six months. On September 30, 2015, while on his way to work, Plaintiff's car was caught in the crossfire of a shootout. He was shot twice in the right leg, which caused a broken leg and blood loss. He was hospitalized for 13 days, had three surgeries and multiple therapy sessions, and was unable to stand for approximately one month.

Plaintiff returned to work on January 4, 2016, after giving prior notice to the City. He arrived with a letter signed by two of his physicians, which outlined certain restrictions but cleared him for "light duty" work. When he arrived at work, his supervisor told him there was no work for him that day, and the director of the department ordered him to go home. The next day, Plaintiff reported for work again, and his supervisor again told him to go home. Plaintiff then asked the

director if he would be paid, and he was given no explanation. The director told Plaintiff he could not return to work because he could not drive a vehicle and the City was not prepared to accommodate his request for light duty work. Plaintiff then pointed out that the City previously accommodated two other code enforcers with similar injuries (a broken foot and a broken ankle) with light duty desk work and asked if he was being treated this way because of a grievance he previously pursued through his union. He was then escorted off the premises. On or about January 20, 2016, the City transferred Plaintiff to another facility and division and randomly drug tested him. He resigned on March 7, 2016, for "medical reasons," but the City reported to state agencies that he left to pursue other career opportunities, which prevented him from receiving unemployment benefits.

Before filing his case in this Court, Plaintiff pursued administrative relief through the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR"). (Doc. 17 ¶ 21.) During the administrative proceedings, the City stated that it did not have a light duty policy or transitional duty program for employees injured off the job—only for those injured on the job. In this Court, Plaintiff asserts five causes of action: (1) discrimination under Title I of the ADA; (2) retaliation under the MHRA; (3) willful violations of the ADA and MHRA; (4) breach of contract; and (5) intentional or negligent infliction of emotional distress. The City has moved to dismiss, and the motion is ready for decision. (Doc. 18.)

**Legal Standard**

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quotation marks and citation omitted). Although the Court liberally construes pro se pleadings, a complaint "still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The Court will not "supply additional facts" or "construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Id.* (quotation marks and citation omitted).

**Discussion**

The City argues that Plaintiff failed to plead (1) the elements of a disability discrimination claim, (2) exhaustion of administrative remedies, (3) the elements of a breach of contract claim, and (4) waiver of sovereign immunity as to his emotional distress claim. The City's first argument lacks merit; Plaintiff has stated claims for disability discrimination and failure to accommodate. However, Plaintiff's allegation that he was retaliated against for pursuing a union grievance is not exhausted, and the allegations in the Amended Complaint do not sufficiently state claims for breach of contract or infliction of emotional distress.

**I.    Disability Discrimination and Failure to Accommodate (Counts I and III)**

To establish a disability discrimination claim under the ADA, the plaintiff must show that he or she "(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action because of [his or] her disability." *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 845 (8th Cir. 2015). To establish a failure-to-accommodate claim under the ADA, the plaintiff "must establish both a prima facie case of discrimination based on [his or] her disability and a failure to accommodate it." *Schaffhauser v. UPS, Inc.*, 794 F.3d 899, 905 (8th Cir. 2015). "To establish a *prima facie* case under the MHRA the plaintiff must show that: (1) he [or she] is legally disabled; (2) he [or she] was discharged or suffered an adverse employment action; and (3) the disability was a factor in his [or her] discharge or adverse employment action." *Baldridge v. Kan. City Pub. Sch.*, 552 S.W.3d 699, 710 (Mo. App. 2018).

The City argues that the Amended Complaint fails to allege that Plaintiff was "disabled," that he was still "qualified" to work, and that there was a causal link between the City's actions and a disability. The Court disagrees. Although the pro se Amended Complaint does not track the legal test for these claims with precision, its factual allegations are sufficient to state claims for disability discrimination and failure to accommodate. *See Smith v. Ouachita Tech. Coll.*, 337 F.3d 1079, 1080 (8th Cir. 2003) (A cause of action should not be dismissed "merely because it does not state with precision all elements that give rise to a legal basis for recovery.") (quotation marks and citation omitted); *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994) (The Court must liberally construe pro se complaints.).

As to the City's first argument, the Amended Complaint contains sufficient allegations of a disability. A "disability" includes "a physical . . . impairment that substantially limits one or

more major life activities," such as "walking, standing, lifting, bending, . . . and working." 42 U.S.C. § 12102(1)(A), (2)(A). Plaintiff alleges he was hospitalized for 13 days, underwent several surgeries and extensive therapy, and was unable to stand for one month. From this, the Court can infer that his injury substantially limited at least one of Plaintiff's major life activities when he returned to work approximately 12 weeks after the injury.

Plaintiff has also adequately pled that he was "qualified." "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. . . ." 42 U.S.C. § 12111(8). A "reasonable accommodation" may include "job restructuring" or "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B) (quotation marks omitted). Plaintiff alleges that he served as a code enforcement officer for approximately nine-and-a-half years and that he was denied a desk job that was given to other code enforcement officers when they were injured. These are sufficient allegations that he was qualified to continue working.

Finally, the cases cited by the City addressing the causation element are distinguishable. *Henderson v. United Auto Workers Local 249 Union*, No. 4:16-cv-763-FJG, 2017 WL 3461368, at *4-5 (W.D. Mo. Aug. 11, 2017) (no causal link between alleged disability and termination); *Nickless v. Saint Gobain Containers*, No. 4:11-cv-1514-CAS, 2012 WL 1414849, at *4–5 (E.D. Mo. Apr. 24, 2012) (same); *Johnson v. McDonald*, No. 4:15-cv-1869-CAS, 2016 WL 3997072, at *5-7 (E.D. Mo. July 26, 2016) (no causal link or specific impairment alleged); *Parrish v. Carlson Wagonlit Travel Grp.*, No. 4:09-cv-1458-CEJ, 2010 WL 1329703, at *2 (E.D. Mo. Apr. 6, 2010) (no specific impairment alleged). Unlike those cases, the Amended Complaint alleges facts suggesting there was a causal link between the City's actions and Plaintiff's impairment. He claims he was sent home, denied a desk job, transferred, and randomly drug tested as soon as he attempted to return to work. This is sufficient to allege causation. Therefore, Counts I and III will not be dismissed at this time.[1]

---

[1] Plaintiff asserts in his opposition to the Motion to Dismiss that he was "constructively terminated." This allegation is relevant to Plaintiff's claims because it goes to whether the City took "adverse employment action." *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013). However, as the City points out, Plaintiff has not pled a separate "wrongful discharge" claim under Missouri law for violation of public policy. *United States ex rel. Miller v. Weston Educ., Inc.*, 840 F.3d 494, 506-07 (8th Cir. 2016) (describing such a claim); *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation marks and citation omitted).

## II. MHRA Retaliation (Count II)

The City next argues that the Amended Complaint does not plead exhaustion of administrative remedies as to Plaintiff's MHRA retaliation claim. To exhaust administrative remedies under the MHRA, a plaintiff must "give notice of all claims of discrimination in the administrative complaint." *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000) (quotation mark and citation omitted). "[T]he administrative complaint must be construed liberally[,] . . . and a plaintiff may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Id.* at 631 (quotation marks and citation omitted). "The breadth of the civil suit is, therefore, as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." *Id.* To establish a prima facie case of retaliation under the MHRA, a plaintiff must prove: "(1) [the plaintiff] complained of discrimination; (2) the employer took adverse action against [the plaintiff]; and (3) a causal relationship existed between the complaint and the adverse action." *Mignone v. Mo. Dep't of Corr.*, 546 S.W.3d 23, 37 (Mo. App. 2018) (quotation mark and citation omitted) (emphasis in original). If failure to exhaust "is apparent on the face of the complaint," it "can provide the basis for dismissal under Rule 12(b)(6)." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 728 F.3d 853, 861 (8th Cir. 2013) (quotation mark and citation omitted).

In Count II, Plaintiff alleges that the City unlawfully retaliated against him "[b]y engaging in retaliation efforts, trying to force the Plaintiff to resign, and harassing him for appealing an annual review that proved inaccurate and his claiming equal employment opportunity rights with a documented disability and hardship." (Doc. 17 ¶ 29.) Plaintiff attached the administrative charge that he filed with the MCHR to his original Complaint in this Court. (Doc. 7-2.) Although Plaintiff did not check the box labeled "Retaliation" on the charge form, the narrative states: "I believe I was treated differently in the terms and conditions of employment due to my disability and in retaliation for opposing discrimination by asking the names of other individuals who were on light duty." (*Id.*) This was sufficient to exhaust the part of his retaliation claim alleging negative treatment after reporting his disability. Accordingly, the retaliation claim will not be dismissed at this time. However, the part of Count II that alleges Plaintiff was retaliated against for pursuing a union grievance is not reasonably related to the allegations in the MCHR charge. In other words, Plaintiff has not exhausted administrative remedies under the MHRA as to his claim that he was

5

retaliated against because of a previous union grievance. Therefore, this part of Count II fails to state a claim.

### III. Breach of Contract (Count IV)

The Amended Complaint does not sufficiently state a claim for breach of contract. "A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010). Here, the original Complaint alluded to lost medical and pension benefits without describing any specific contract. (Doc. 7 at 5-6.) The Amended Complaint, which superseded the original Complaint, *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014), states only as follows: "By providing false information to state agencies, precluding Plaintiff from receiving unemployment benefits and failing to follow its own personnel policies and procedures on evaluating and providing equal employment opportunities to its employees, Defendant has breached their [sic] contractual obligation to Plaintiff." (Doc. 17 ¶ 32.) This is insufficient to show that Plaintiff had a contract with Defendant. Missouri cities are prohibited from entering into contracts unless they are in writing, § 432.070, RSMo 2016, and the publishing of an employee handbook alone is not an offer to enter into a contract, *Doran v. Chand*, 284 S.W.3d 659, 664 (Mo. App. 2009). Therefore, Count IV fails to state a claim.

### IV. Intentional or Negligent Infliction of Emotional Distress (Count V)

As pled, these claims are barred by sovereign immunity. "Under Missouri law, a municipal corporation is entitled to sovereign immunity from tort claims arising out of its performance of governmental functions unless: 1) the claimed injuries arose from an automobile accident in which public employees are involved; 2) the claimed injuries arose from the existence of a dangerous condition on public property; or 3) under certain circumstances, the municipal corporation has waived sovereign immunity by purchasing liability insurance." *Parish v. Novus Equities Co.*, 231 S.W.3d 236, 245 (Mo. App. 2007); *Kunzie v. City of Olivette*, 184 S.W.3d 570, 574 & n.4 (Mo. banc 2006); §§ 537.600, 537.610, 71.185, RSMo 2016.

Plaintiff has not alleged or argued that (1) his injuries arose from an automobile accident; (2) his injuries arose from a dangerous condition; or (3) the city had a liability insurance policy that covered his claims. Instead, Plaintiff contends that because his "job was a proprietary

function, rather than a government function—providing inspections to certify Uber drivers"—the City is not entitled to sovereign immunity. (Doc. 26 at 10.) This "proprietary function" allegation is not in the Amended Complaint. Even if it were, "enforcing . . . ordinances" is "an act of a municipality performed for the common good of all [and] is classified as a governmental function." *Parish*, 231 S.W.3d at 242. Likewise, the Missouri Supreme Court "has held that termination of a city employee is a governmental function." *Kunzie*, 184 S.W.3d at 574. Therefore, sovereign immunity applies, and Count V fails to state a claim.

## Conclusion

Accordingly, the City's Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Specifically, Counts IV, V, and the part of Count II that alleges the City retaliated against Plaintiff for pursuing a union grievance are **DISMISSED.** The City's Answer to the remaining claims is due January 31, 2019.[2]

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: January 17, 2019

---

[2] The Scheduling Order deadline for amending the complaint has passed. (Doc. 25.) If Plaintiff seeks to add allegations to this case, he must (1) file a motion showing good cause to amend the scheduling order, and (2) either obtain consent from the City or file a proper motion and obtain the Court's leave to file a proposed second amended complaint. *See* Fed. R. Civ. P. 15; Fed. R. Civ. P. 16; Local Rule 15.1; Local Rule 16.3.